IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRIC OF PENNSYLVANIA

SKECHERS U.S.A., INC. II,

Plaintiff,

Case No. 26-cv-626

v.

SCHEDULE A DEFENDANTS,

Defendants.

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, SKECHERS U.S.A., INC. II ("SKECHERS" or "Plaintiff"), hereby sues Defendants, the Individuals, Partnerships, and Unincorporated Associations identified in the Caption and which are set forth in Schedule "A" hereto (collectively, "Defendants"). Defendants are promoting, offering for sale, selling, and/or distributing goods within this district through at least the fully interactive commercial Internet websites and supporting domains operating under the domain names identified on Schedule "A" (the "Cybersquatted Domain Names"). In support of its claims, Plaintiff alleges as follows:

### NATURE OF THE ACTION

1.      This is a civil action for cybersquatting under the Lanham Act, 15 U.S.C. §1125(d). The Defendants have registered their respective Cybersquatted Domain Name(s) using domains that are nearly identical and/or confusing similar to Plaintiff's registered trademarks for SKECHERS.

### JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

3.    Personal jurisdiction over each Defendant satisfies constitutional due process because each Defendant has purposefully directed and expressly aimed its tortious activities at the Commonwealth of Pennsylvania and established sufficient minimum contacts with Pennsylvania by, among other things, be willing to accept an order for a product through the Cybersquatted Domain Name(s) with a Pennsylvania address, be willing to ship the product to that representative in Pennsylvania, and be willing to collecting Pennsylvania sales tax. In addition, upon information and belief, each Defendant has sold additional products through the Cybersquatted Domain Name(s) to consumers within Pennsylvania not affiliated in any way with Plaintiff through the regular course of business, with the knowledge that Plaintiff is harmed in Pennsylvania as a result of its sales of products through the Cybersquatted Domain Name(s) to Pennsylvania residents. Plaintiff's claims arise out of and relate to Defendants' sales of products through the Cybersquatted Domain Name(s) to Pennsylvania residents through the regular course of business.

4.    Personal jurisdiction over each Defendant also satisfies constitutional due process because the cause of action asserted herein, including cybersquatting, is an intentional tort, was aimed at Pennsylvania, and caused harm that each Defendant should have anticipated would be suffered by Plaintiff in Pennsylvania.

5.    Upon information and belief, Defendants have cooperated, communicated, shared information, and coordinated their efforts in order to create an marketplace operating in parallel to the legitimate marketplace of Plaintiff and third parties authorized to sell products using Plaintiff's Trademarks, including: employing and benefitting from substantially similar paid advertising, marketing, and advertising strategies (*e.g.*, search engine optimization or "SEO"), in order to make their online storefronts appear more relevant and target a consumer searching for Plaintiff's products. By their actions, in addition to the damages associated with unauthorized use of

Plaintiff's Trademarks, Defendants are causing concurrent and irreparable harm to Plaintiff and the consuming public by: (1) reducing the online visibility of Plaintiff's products; (2) diluting and eroding the retail market price for Plaintiff's products; (3) causing overall degradation of the value of goodwill associated with Plaintiff's products; (4) devaluing the exclusivity that enhances the worth of Plaintiff's products and reputation; and (5) increasing Plaintiff's overall cost to market its goods and educate consumers about Plaintiff's products.

6.      Upon information and belief, Defendants are aware of Plaintiff and Plaintiff's products and are aware that their cybersquatting is likely to cause harm to Plaintiff in Pennsylvania.

7.      Plaintiff is suffering irreparable and indivisible injury and has suffered substantial damages as a result of Defendants' cybersquatting.

8.      Personal jurisdiction over each Defendant satisfies the Pennsylvania long-arm statute, and therefore Rule 4(k)(1)(A) of the Federal Rules of Civil procedure.  42 Pa. Cons. Stat. § 5322 (a) provides in pertinent part: "A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth.  Without excluding other acts which may constitute transacting business for the purpose of this paragraph: (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit ... (3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth ... (10) Committing any violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit."  Defendants are subject to jurisdiction under the Pennsylvania long-arm statute because, upon information and belief, Defendants have committed the intentional tort of

3

cybersquatting in Pennsylvania, accepted orders from Pennsylvania residents, shipped products through the Cybersquatted Domain Name(s) into Pennsylvania, and collected Pennsylvania sales tax on such orders.

9.     By virtue of the civil conspiracy claim in Count II of this Complaint, the Pennsylvania contacts of each Defendant are imputed to every other Defendant because, upon information and belief, each Defendant was aware of, or should have been aware of, the actions of the other co-conspirators.

10.     By virtue of the civil conspiracy claim in Count II of this Complaint and the allegations of coordinated actions by Defendants, Plaintiff's claims against Defendants arise out of the same series of transactions and occurrences.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391:  Defendants do not reside in the United States and are subject to venue in any district. Further, Defendants solicit business from this Judicial District and, upon information and belief, conduct and transact significant business in this Judicial District.

## THE PLAINTIFF

12.     Plaintiff, SKECHERS U.S.A., INC. II, is a Virginia corporation and a wholly owned subsidiary of Skechers U.S.A., Inc. that maintains its principal place of business at 228 Manhattan Beach Blvd., Manhattan Beach, California, 90266. Hereinafter, for the sake of brevity, the terms "SKECHERS" or "Plaintiff" will reference both SKECHERS U.S.A., Inc. II and its parent company, Skechers U.S.A., Inc.

13.     Plaintiff is the owner of U.S. Trademark Registration No. 1,851,977 for SKECHERS (the "SKECHERS Trademarks"). The registration is valid, subsisting, unrevoked, and uncancelled. The registration constitute prima facie evidence of validity and of Plaintiff's

exclusive right to use the trademark pursuant to 15 U.S.C. § 1057(b). The SKECHERS Trademark are incontestable. Genuine and authentic copies of the U.S. federal trademark registration certificate for the SKECHERS Trademarks are attached as **Exhibit 1**.

14.    Plaintiff is engaged in the business of developing, selling, and distributing high-quality, comfortable, stylish, and innovative shoes, apparel, and accessories, including within the Western District of Pennsylvania under the federally registered SKECHERS Trademarks (collectively, the "SKECHERS Products"). Defendants' registration of the Cybersquatted Domain Name(s), using the SKECHERS Trademarks without authorization, is in violation of Plaintiff's intellectual property rights and is irreparably damaging Plaintiff and its affiliates.

15.    Plaintiff's brand, symbolized by the SKECHERS Trademarks, is a recognized symbol of high-quality, comfortable, stylish, and innovative shoes, apparel, and accessories at reasonable prices.

16.    The SKECHERS Trademarks are distinctive and identify the merchandise as goods originating from Plaintiff. The registrations for the SKECHERS Trademarks constitute prima facie evidence of validity and of Plaintiff's exclusive right to use the trademarks pursuant to 15 U.S.C. § 1057(b). The SKECHERS Trademarks have been continuously used and never abandoned.

17.    Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the SKECHERS Trademarks. Plaintiff's authentic SKECHERS Products feature unique designs that are instantly recognizable to consumers. Plaintiff has invested significant resources to market and promote SKECHERS Products around the world. As a result, products bearing the SKECHERS Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff.

18.    For many years, Plaintiff has operated the skechers.com website. Sales of Plaintiff's SKECHERS Products via this website are significant. The website features proprietary content, images, and designs exclusive to Plaintiff's brand.

**ORIGINAL**



https://www.skechers.com/

**CONTENT DISPLAYED THROUGH CYBERSQUATTED DOMAIN NAME(S)**



**THE DEFENDANTS**

19.     Defendants are individuals and/or business entities who, upon information and belief, reside in the People's Republic of China and/or other foreign jurisdiction or redistribute products from the same or similar sources in those locations.

20.     Defendants conduct business throughout the United States, including within Pennsylvania and in this judicial district, through the operation of the fully interactive commercial websites operating under the Cybersquatted Domain Names. Defendants facilitate sales by designing the websites operating under the Cybersquatted Domain Names, so they appear to unknowing consumers to be authorized online retailers selling genuine SKECHERS Products.

21.     Defendants target the United States, including Pennsylvania, and have packaged, advertised, offered to sell and, on information and belief, have sold and continue to sell counterfeit SKECHERS Products through the Cybersquatted Domain Names to consumers within the United States, including in Pennsylvania and this judicial district.

22.     Upon information and belief, the Defendants use aliases in conjunction with the operation of their businesses as set forth in Schedule "A" hereto.

23.     Upon information and belief, Defendants are the past and present forces behind the sale of products sold through the Cybersquatted Domain Names.

24.     Upon information and belief, Defendants have registered, established or purchased, and maintained the Cybersquatted Domain Name(s). Upon information and belief, Defendants have engaged in fraudulent conduct with respect to the registration of the Cybersquatted Domain Name(s) by providing false and/or misleading information to the registrars during the registration or maintenance process related to their respective Cybersquatted Domain Name(s). Upon information and belief, Defendants have anonymously registered and maintained some of the Cybersquatted Domain Name(s) for the purpose of engaging in illegal infringing activities.

25. Upon information and belief, Defendants will continue to register for or acquire new seller identification aliases for the purpose of selling and offering for sale goods bearing and/or using confusingly similar imitations of Plaintiff's SKECHERS Trademarks unless preliminarily and permanently enjoined.

26. Defendants' business names, i.e., the Cybersquatted Domain Names, associated payments accounts, and any other alias seller identification names used in connection with the sale of goods through the Cybersquatted Domain Names are essential components of Defendants' online activities and are the means by which Defendants further their infringement scheme and cause harm to Plaintiff. Moreover, Defendants are using Plaintiff's SKECHERS Trademarks to drive Internet consumer traffic to their e-commerce stores operating under the Defendant Domain Names, thereby creating and increasing the value of the Cybersquatted Domain Names and decreasing the size and value of Plaintiff's legitimate consumer marketplace at Plaintiff's expense.

27. Upon information and belief, Defendants' sale of goods through the Cybersquatted Domain Names gives rise to a plausible expectation that discovery will reveal that Defendants' actions all arise from the same transaction, occurrence, or series of transactions. Specifically, the website operated at the Cybersquatted Domain Names share unique identifiers, such as descriptions, and similarities of the products offered for sale such as descriptions, product images, colors, shapes, and sizes, thus establishing a logical relationship between them and suggesting that the defendants' illegal activities arise out of the same transaction, occurrence, or series of transactions or occurrences.

**THE DEFENDANTS' UNLAWFUL CONDUCT**

28. The success of the SKECHERS brand has resulted in its counterfeiting. Defendants conduct their illegal operations through fully interactive commercial websites operating under the

Cybersquatted Domain Names. Each Defendant targets consumers in the United States, including the Commonwealth of Pennsylvania and has offered to sell and, on information and belief, has sold and continues to sell products through the Cybersquatted Domain Names that violate Plaintiff's intellectual property rights to consumers within the United States, including in the Commonwealth of Pennsylvania.

29.     Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use Plaintiff's SKECHERS Trademarks in connection with the advertisement, distribution, offering for sale, and sale of products into the United States and Pennsylvania over the internet.

30.     As part of their overall infringement scheme, Defendants are, upon information and belief, concurrently employing and benefiting from substantially similar advertising and marketing strategies based, in large measure, upon an illegal use of Plaintiff's SKECHERS Trademarks. Specifically, Defendants are using infringements of Plaintiff's rights in order to make their e-commerce stores selling illegal goods appear more relevant and attractive to consumers online. By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods. Defendants are causing individual, concurrent, and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the Plaintiff's rights, and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers about its brand via the Internet.

9

31.     Defendants do not have nor ever had the right or authority to use Plaintiff's SKECHERS Trademarks. Further, Plaintiff's SKECHERS Trademarks have never been assigned or licensed to be used on any of the websites operating under the Cybersquatted Domain Names. Upon information and belief, Defendants have provided false and/or misleading contact information when applying for the registration of the Cybersquatted Domain Names or have intentionally failed to maintain accurate contact information with respect to the registration of the Cybersquatted Domain Names.

32.     Defendants have never used the Cybersquatted Domain Names in connection with a bona fide offering of goods or services.

33.     Defendants have not made any bona fide non-commercial or fair use of Plaintiff's SKECHERS Trademarks on a website accessible under the Cybersquatted Domain Names.

34.     Defendants have intentionally incorporated Plaintiff's SKECHERS Trademarks in their respective Cybersquatted Domain Names to divert consumers looking for Plaintiff's website to their own websites for commercial gain.

35.     Upon information and belief, Defendants will continue to register or acquire domain names for the purpose of selling Counterfeit Products that infringe upon the SKECHERS Trademarks unless preliminarily and permanently enjoined.

36.     Plaintiff has no adequate remedy at law.

37.     Plaintiff is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and wrongful use of at least one of Plaintiff's SKECHERS Trademarks. If Defendants' infringing and unfairly competitive activities are not preliminary and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

38.    The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Products.

## COUNT I
## CYBERSQUATTING (15 U.S.C. § 1125(d))

39.    Plaintiff repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

40.    Defendants acted with the bad faith intent to profit from Plaintiff's SKECHERS Trademarks and used the Cybersquatted Domain Names.

41.    Plaintiff's marks were distinctive and famous at the time Defendants registered the Cybersquatted Domain Names.

42.    The Cybersquatted Domain Names are identical to, confusingly similar to, or dilutive of one or more of Plaintiff's SKECHERS Trademarks.

43.    Defendants' conduct is done with knowledge and constitutes a willful violation of Plaintiff's rights in Plaintiff's SKECHERS Trademarks. At a minimum, Defendants' conduct constitutes reckless disregard for and willful blindness to Plaintiff's rights.

44.    Defendants' actions constitute cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

45.    Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT I
## (CIVIL CONSPIRACY)

46.    Plaintiff repeats and adopts and incorporates by reference herein the allegations contained in the above paragraphs of this Complaint.

11

47. Plaintiff is informed and believes and therefore alleges upon information and belief that Defendants knowingly and voluntarily entered into a scheme and agreement to engage in a combination of unlawful acts and misconduct including, without limitation, a concerted and collaborated effort to maintain the distribution, marketing, advertising, shipping, and sale of products through the Cybersquatted Domain Names.

48. The intent, purpose, and objective of the conspiracy and the underlying combination of unlawful acts and misconduct committed by the Defendants was to unfairly compete against Plaintiff and to profit from Plaintiff's intellectual property.

49. Each Defendant understood and accepted the foregoing scheme and agreed to do its respective part to further accomplish the foregoing intent, purpose, and objective. Thus, by entering into the conspiracy, each Defendant has deliberately, willfully, and maliciously permitted, encouraged, and induced all of the foregoing unlawful acts and misconduct.

50. As a direct and proximate cause of the unlawful acts and misconduct undertaken by each Defendant in furtherance of the conspiracy, Plaintiff has sustained, and unless each Defendant is restrained and enjoined, will continue to sustain severe, immediate, and irreparable harm, damage, and injury for which Plaintiff has no adequate remedy at law.

51. As a result of Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from their false advertisements, and exemplary or punitive damages for Defendants' intentional misconduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily preliminarily, and

12

permanently enjoined and restrained from:

    a.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Cybersquatted Domain Names or any other website that is being used to sell or is the means by which Defendants could continue to sell products; and

    b.  operating and/or hosting websites at the Cybersquatted Domain Names and any online marketplace accounts registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the SKECHERS Trademarks or any reproduction, counterfeit copy, or colorable imitation thereof that is not a genuine SKECHERS Product or not authorized by Plaintiff to be sold in connection with the SKECHERS Trademarks.

2) That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1, a through b, above;

3) Entry of an Order that, at Plaintiff's choosing, the registrants of the Defendant Domain Names shall be changed from the current registrants to Plaintiff, and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Plaintiff's selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap, Inc. ("Namecheap"), shall take any steps necessary to transfer the Defendant

Domain Names to a registrar account of Plaintiff's selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

4) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces, social media platforms, Facebook, YouTube, LinkedIn, Twitter, internet search engines such as Google, Bing, and Yahoo, web hosts for the Defendant Domain Names, and online marketplace account registrars, shall:

a.  disable and cease providing services for any accounts through which Defendants engage in the sale of products using the SKECHERS Trademarks, including any accounts associated with the Defendants;

b.  disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of products using the SKECHERS Trademarks; and

c.  take all steps necessary to prevent links to the Cybersquatted Domain Names identified in Schedule A from displaying in search results, including, but not limited to, removing links to the Cybersquatted Domain Names from any search index;

5) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

6) That Defendants account to and pay Plaintiff Goyard for all profits and damages resulting from the Defendants' cybersquatting activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C. § 1117, or that Plaintiff be awarded statutory damages from the Defendants in the amount of one hundred thousand dollars ($100,000.00) per cybersquatted domain name used as provided by 15 U.S.C. § 1117(d) of the Lanham Act.

7) In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the SKECHERS Trademarks;

8) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

9) Award any and all other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all claims.

Respectfully submitted,

Dated:  April 10, 2026                    /s/ Stanley D. Ference III
                                          Stanley D. Ference III
                                          Pa. ID No. 59899
                                          courts@ferencelaw.com

                                          FERENCE & ASSOCIATES LLC
                                          409 Broad Street
                                          Pittsburgh, Pennsylvania 15143
                                          (412) 741-8400 – Telephone
                                          (412) 741-9292 – Facsimile

                                          Attorneys for Plaintiff

15

## <u>LIST OF EXHIBITS</u>

Exhibit 1        Registration certificates for the SKECHER'S Trademarks

**Schedule "A"**

**[This page is the subject of Plaintiff's Motion to File Under Seal. As such, this page has been redacted in accordance with L.R. 5.4(b)(1)]**